UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| THERESA RAPLEY; SUE RIDDELL; JUDY TINSMAN; ANNAMARIA MAGLIULO; ANGELA FENN; BRITNY DE LEON and DERRICK NEELEY, | Case No. 3:17-cv-00294-YY |
| Plaintiffs, | FINDINGS AND RECOMMENDATIONS |
| v. | |
| OREGON DEPARTMENT OF HUMAN SERVICES, STABILIZATION AND CRISIS UNIT; JANA MCLELLAN; BRADLEY HEATH; TESSA BASTON; and CLYDE SAIKI, individually and in their official capacities, | |
| Defendants. | |

YOU, Magistrate Judge:

Before the court is Defendants' Motion to Dismiss for Failure to State a Claim (ECF #3) under FRCP 12(b)(6). At oral argument, plaintiffs asked for leave to amend the complaint as an alternative to dismissal with prejudice. ECF #7. For the reasons that follow, defendants' motion to dismiss should be GRANTED, with leave to amend the first and second claims only.

///

///

## BACKGROUND

Plaintiffs are or were employed by the Oregon Department of Human Services ("DHS") Stabilization and Crisis Unit ("SACU") as Mental Health Therapy Technicians. First Amended Complaint ¶2.[1] Plaintiffs allege that, while working as technicians at SACU, they suffered physical and mental harm from mentally ill persons,[2] including concussions, bites, strains, sprains, cuts, contusions, bruises, contact with bodily fluids and waste, depression, and anxiety—and accompanying economic and non-economic damages. *Id.* ¶¶14–16. Named defendants include DHS, SACU, DHS' Director, and SACU's executive director, deputy director, and regional oversight manager. *Id.* ¶¶3–7. Plaintiffs seek relief from the individually named defendants in their personal and official capacities, and allege that, at all relevant times, defendants were acting under color of state law. *Id.* ¶¶3–6, 8, 18. Plaintiffs also allege that defendants were responsible for the operations, policies, and practices at SACU that led to their injuries, knew of the risk of injury, were responsible for the training and staffing that led to injuries, and required plaintiffs to work under terms and conditions that were certain to cause their injuries. *Id.* ¶¶8–12.

Plaintiffs bring four claims for relief:

<u>Claim One</u>: A claim for economic and non-economic damages against the individually named defendants in their personal capacities under 42 U.S.C. § 1983, alleging a 14th

---

[1] The First Amended Complaint is found in Notice of Removal, ECF #1, Ex. A, at 4–14.

[2] While the complaint is silent on who did the biting, and caused the concussions and bruising, etc., the only reasonable inference is that it was the mentally ill people whom the plaintiffs (as mental health therapy technicians) were stabilizing. Plaintiffs admit as much in their Response as well. *See* Response, ECF #4, at 2, 6. Suffice it to say, the individually named defendants did not inflict the physical harms themselves.

2 – FINDINGS AND RECOMMENDATIONS

Amendment violation of the substantive due process right to bodily integrity and life. *Id.* ¶¶17–20.

      Claim Two:  The same basis as Claim One, but for injunctive and equitable relief against DHS, SACU, and the individually named defendants in their personal and official capacities. *Id.* ¶¶21–23.

      Claim Three:  A claim for economic and non-economic damages against the individually named defendants in their personal capacities pursuant to 42 U.S.C. § 1983 on the basis they failed to comply with ORS 654.010, which plaintiffs characterize as a state "mandate." *Id.* ¶¶24–28.

      Claim Four:  The same basis as Claim Three, but for injunctive and equitable relief against DHS, SACU, and the individually named defendants in their personal and official capacities. *Id.*

## **STANDARD OF REVIEW**

      A motion to dismiss for failure to state a claim under FRCP 12(b)(6) may be granted only when there is no cognizable legal theory to support the claim or when the complaint lacks sufficient factual allegations to state a facially plausible claim for relief.  *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010).  In evaluating the sufficiency of a complaint's factual allegations, the court must accept as true all well-pleaded material facts alleged in the complaint and construe them in the light most favorable to the non-moving party.  *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012); *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010).  To be entitled to a presumption of truth, allegations in a complaint "may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the

opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). All reasonable inferences from the factual allegations must be drawn in favor of the plaintiff. *Newcal Indus. v. Ikon Office Solution*, 513 F.3d 1038, 1043 n.2 (9th Cir. 2008). The court need not, however, credit the plaintiff's legal conclusions that are couched as factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009).

A complaint must contain sufficient factual allegations to "plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr*, 652 F.3d at 1216 (discussion FRCP 8(a)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

## **FINDINGS**

In their current state, none of plaintiffs' claims state a claim upon which relief can be granted. Claims three and four should be dismissed with prejudice because any amendment would be futile. Amendment of claims one and two, however, may not be futile and thus should be allowed at this early stage of the case.

### I. First and Second Claims: 42 U.S.C. § 1983 and 14th Amendment

Indisputably, "the Constitution does not guarantee a right to a safe workplace." *See, e.g.*, *Jensen v. City of Oxnard*, 145 F.3d 1078, 1083 (9th Cir. 1998) (citing *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 128 (1992)). Plaintiffs appear to acknowledge this and instead argue they "have a constitutional right under the 14th amendment to substantive due process for protection of life, including bodily integrity." Response, ECF #4, at 1–2.

Plaintiffs cite *Schmerber v. California,* 384 U.S. 757, 769–70 (1966), *Rochin v. California,* 342 U.S. 165, 168–69 (1952), and *Union Pacific Ry. Co. v. Botsford,* 141 U.S. 250, 250 (1891), for the proposition that they can bring a Section 1983 claim under substantive due process for protection of life, including bodily integrity for injuries sustained by third parties at work. Response, ECF #4, at 2. Plaintiffs also cite *L.W. v. Grubbs*, 974 F.2d 119 (9th Cir. 1992) ("*Grubbs I* "), and *L.W. v. Grubbs*, 92 F.3d 894, 900 (9th Cir. 1996) ("*Grubbs II")*, which lay out the two exceptions to the general rule that there is no constitutional right to certain minimal levels of safety and security, and argue these cases allow them to bring Section 1983 claims for violation of the right to bodily integrity. *Id.* However, in their analysis, plaintiffs conflate substantive due process with procedural due process, confuse the right to bodily integrity with the exceptions to the rule that there is no constitutional right to sue state employees who fail to protect them against harm inflicted by third parties, and confuse *Monell* liability for municipalities and local governments with Section 1983 liability for state officials acting in their personal capacities.

*Schmerber* was a procedural due process case that held there were no Fourth or Fifth Amendment violations when police conducted a compulsory and warrantless blood test of a drunk driver. 384 U.S. at769–70. *Rochin* was another procedural due process case involving the forced stomach pumping of an arrestee for illegal morphine possession. 342 U.S. at 168–69. *Botsford* is a seldom cited nineteenth century case—and yet another procedural due process case—where the Court "expressed the common law view that court-ordered medical examinations were repugnant to a person's privacy and bodily integrity." *Boswell v. Schultz*, 175 P.3d 390, 393 (Okla. 2007) (citing *Botsford,* 141 U.S. at 251). This view, however, is no longer

valid as courts regularly order medical examinations so that defendants may verify the existence and extent of a plaintiff's injury. *Id.*; *see also* FRCP 35; ORCP 44.

These cases, which deal with procedural due process, are inapplicable because plaintiffs claim their substantive due process rights were violated. First Amended Complaint ¶¶21–23. They do not claim their procedural due process rights were ever violated. Additionally, and most importantly, these cases involve harm inflicted by state employees, not by third parties. Moreover, as discussed below, plaintiffs' claims are not saved by the exceptions to the general rule set forth in *Deshaney*, *Grubbs I,* and *Grubbs II* that "members of the public have no constitutional right to sue state employees who fail to protect them against harm inflicted by third parties." *Grubbs I*, 974 F.2d at 121 (citing *Deshaney*, 489 U.S. at 197).

### A. Exceptions to the general rule

The 14th amendment "is phrased as a limitation on the States power to act, not as a guarantee of certain minimal levels of safety and security. . . . Its purpose was to protect the people from the State, not to ensure that the State protected them from each other." *Deshaney*, 489 U.S. at 195–97. This general rule that "members of the public have no constitutional right to sue state employees who fail to protect them against harm inflicted by third parties is modified by two exceptions: (1) the special relationship exception; and (2) the danger creation exception." *Grubbs I*, 974 F.2d at 121 (citing *Deshaney*, 489 U.S. at 197) (internal quotation marks omitted); *Johnson v. City of Seattle*, 474 F.3d 634, 639 (9th Cir. 2007).

#### 1. Special Relationship Exception

The special relationship exception applies when "the state has created a special relationship with a person, as in the case of custody or involuntary hospitalization." *Grubbs I*, 974 F.2d at 121; *see also* 1 NAHMOD, CIVIL RIGHTS & CIVIL LIBERTIES LITIGATION: THE LAW OF

SECTION 1983 § 3:61 ("Special relationships, a concept borrowed from tort law, can arise where the plaintiff is in the custody of the state or where the state has otherwise placed the plaintiff in a helpless or dependent position.") (footnote omitted).

> This special relationship exception is created when the State takes a person into its custody and holds him there *against his will.* It is the State's affirmative act of restraining the individual's freedom to act on his own behalf—through incarceration, institutionalization, or other similar restraint of personal liberty—which is the deprivation of liberty triggering the protections of the Due Process Clause. . . . In such a situation, the state has a duty to assume some responsibility for the person's safety and general well-being because it has rendered him unable to care for himself. In the special relationship situation, the state's affirmative duty to protect arises from the limitation the state has imposed on the person's freedom to act for himself; the duty does *not* arise from the State's knowledge of the individual's predicament or from the State's expressions of intent to help.

*Campbell v. State of Washington Dept. of Soc. and Health Services*, 671 F.3d 837, 842–43 (9th Cir. 2011) (quotation marks omitted) (emphasis in original). Courts have then "imposed liability under a due process theory, premised on an abuse of that special relationship." *Grubbs I*, 974 F.2d at 121 (citing *Youngberg v. Romeo*, 457 U.S. 307, 314–15 (1982) and *Estelle v. Gamble*, 429 U.S. 97, 103–04 (1976)).

The Ninth Circuit held in *Campbell v. State of Washington Dept. of Soc. and Health Services* that "the special relationship exception applies when the state holds an individual in custody, as opposed to when an individual *voluntarily* resides in the care of the state. . . . [T]he question is whether . . . the individual was free to leave state custody." 671 F.3d at 849 (emphasis added). Implicit in this holding is that a special relationship does not exist when the relationship is entered into and can be terminated voluntarily. *See also Collins*, 503 U.S. at 128 ("Petitioner cannot maintain, however, that the city deprived [him] of his liberty when it made, and he *voluntarily* accepted, an offer of employment.") (emphasis added).

Here, plaintiffs assert a special relationship exists between themselves and defendants because plaintiffs were employed by defendants and were "controlled by employment contract,

7 – FINDINGS AND RECOMMENDATIONS

regulation, discipline and termination." ECF #4, at 3; First Amended Complaint ¶¶8, 10, 12. However, "[t]he employment relationship is not of controlling significance." *Grubbs I*, at 122 (citing *Collins*, 503 U.S. at 119.) Plaintiffs are not in state custody nor are they are not being held against their will. Defendants aptly point out that "plaintiffs can always quit if they don't like their job." Motion to Dismiss, ECF #3, at 6. There is no plausible factual basis for plaintiffs to invoke the special relationship exception.

### 2. Danger Creation Exception

If an exception is applicable, it is the danger creation exception, which "necessarily involves affirmative conduct on the part of the state in placing the plaintiff in danger. *Grubbs I*, 974 F.2d at 121 (citing *Wood v. Ostrander*, 879 F.2d 583, 588–90 (9th Cir.1989), *cert. denied*, 498 U.S. 938 (1990) and *DeShaney*, 489 U.S. at 201). To state a claim under the danger creation exception, plaintiffs must make three showings.

#### a. (1) Affirmative Conduct that Creates Danger

First, plaintiffs must show "the state action affirmatively places the plaintiff in a position of danger, that is, where state action creates or exposes an individual to a danger which he or she would not have otherwise faced." *Kennedy v. City of Ridgefield*, 439 F.3d 1055, 1061 (9th Cir. 2006)); *Johnson*, 474 F.3d at 639 ("the plaintiff must show that the state official participated in creating a dangerous condition"). Importantly, the state action must do more than simply expose plaintiffs to danger that already exists. For example, the Ninth Circuit has held that state social workers who received complaints that a father repeatedly and severely beat his child but failed to remove the child from the fathers custody "did not create the situation that caused the harm." *DeShaney*, 489 U.S. at 191–93, 207. Although the beatings left the child with "brain damage so severe that he [was] expected to spend the rest of his life confined to an institution for the

profoundly retarded" and the father was later tried and convicted of child abuse, the state's "failure to [act]—though calamitous in hindsight—simply does not constitute a violation of the Due Process Clause." *Id.* at 193, 202.

The court reached the same result in *Johnson v. City of Seattle*, where more than six dozen people were injured and one person was killed during a Mardi Gras celebration in downtown Seattle. 474 F.3d at 637. The court found the police department's "decision to switch from a more aggressive operation plan to a more passive one was not affirmative conduct that placed the [plaintiffs] in danger, because it did not place them in any worse position than they would have been in had the police not come up with any operational plan whatsoever." 474 F.3d at 641.

These cases can be contrasted with the situation in *Wood v. Ostrander* where police conduct "affirmatively" placed the plaintiff in danger by leaving her in a high crime area after impounding the car she was riding in:

> The record in *Wood* contained evidence that a police officer arrested the driver of a vehicle for drunk driving. He ordered the plaintiff, a female passenger, out of the vehicle. The vehicle was impounded. The police officer then drove away, leaving the passenger alone in an area with a high violent crime rate. The temperature outside was only fifty degrees. The passenger was wearing only a blouse and jeans, and her home was five miles away. She accepted a ride from a stranger who took her to a secluded area and raped her.

*Johnson*, 474 F.3d at 639–40 (citing *Wood*, at 879 F.2d at 589–90).

Here, plaintiffs claim that the four individually named defendants authorized and were responsible for SACU's operations, policies, and practices, including the training of mental health technicians, the level and scheduling of staffing, and the placement and assignment of residents. First Amended Complaint ¶8. However, plaintiffs fail to name or otherwise identify any operations, policies, or practices that would allow the defendants or the court to determine whether they affirmatively placed plaintiffs in danger they would not have otherwise faced.

9 – FINDINGS AND RECOMMENDATIONS

There is no accounting of the third parties who actually inflicted harm on the plaintiffs—their identities, their propensities for violence, or what the defendants personally knew about them. Furthermore, it is impossible to conclude that any of SACU's practices and policies would have put plaintiffs in a worse position than they would have been in if SACU did not have any practices or policies at all. The court is unable to draw any inference that plaintiffs are entitled to relief because there is no factual basis for doing so.

### b. (2) Deliberate Indifference

"Second, the exception applies only where the state acts with 'deliberate indifference' to a 'known or obvious danger.'" *Patel v. Kent Sch. Dist.,* 648 F.3d 965, 974 (9th Cir. 2011) (citing *Grubbs II*, 92 F.3d at 900). "Deliberate indifference is 'a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action.'" *Id.* (citing *Bryan Cnty. v. Brown*, 520 U.S. 397, 410 (1997)). The deliberate indifference standard is even higher than gross negligence and requires a culpable mental state. *Id.* "The state actor must recognize an unreasonable risk and actually intend to expose the plaintiff to such risks without regard to the consequences to the plaintiff. In other words, the defendant knows that something *is* going to happen but ignores the risk and exposes the plaintiff to it." *Id.* (citing Grubbs II, 92 F.3d at 899, 900) (emphasis in original). "[T]he defendant must have actual knowledge of, or willfully ignore, impending harm. . . . Less is not enough." *Grubbs II*, 92 F.3d at 900.

To establish deliberate indifference, plaintiffs must show there was "(1) an unusually serious risk of harm, . . . (2) defendant's actual knowledge of (or, at least, willful blindness to) that elevated risk, and (3) defendant's failure to take obvious steps to address that known, serious risk." *Id.*

Here, plaintiffs' amended complaint claims that the individually named defendants were "aware of, informed of and knowledgeable of the risk, frequency, nature and certainty of bodily injuries and harm to [plaintiffs.] At all times material [individually named defendants] knew that bodily injuries and harm to [plaintiffs] . . . were certain to occur." First Amended Complaint ¶8. Plaintiffs claim the individually named defendants authorized and executed policies and practices knowing that bodily injuries and harm to them was certain to occur as a result of those policies and practices, and did so with deliberate indifference. *Id.* ¶10.

These pleadings are conclusory. There is nothing in them that would allow the defendants or the court to reasonably infer what any individually named defendant knew or when he or she knew it, and whether that knowledge and subsequent action rose to the level of negligence or gross negligence, let alone deliberate indifference. The individually named defendants are referred to in the aggregate, which immediately disallows any inference to be made about the culpability of any individual defendant's mental state. To state a claim under Section 1983, "[a] plaintiff must allege facts, not simply conclusions[] that show that an individual was personally involved in the deprivation of his civil rights." *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998).

### c. (3) Constitutional Violation

Third, "[o]nly if the state official was deliberately indifferent does the analysis then proceed further to decide whether the conduct amounts to a constitutional violation." *Grubbs I*, 974 F.2d at 121

Plaintiffs identify the following physical and emotional injuries in their complaint: concussions, bites with and without punctures of the skin, strains and sprains of muscles, ligaments, tendons and joints of the spine and limbs, cuts and contusions, bruises, contact and

exposure to human bodily fluids and waste, depression, and anxiety. First Amended Complaint ¶14. However, the complaint does not state which plaintiff or plaintiffs sustained which injuries, when they sustained them, the severity of the injuries, which third parties inflicted the injuries, or how long it took them to recover. Surely, a single muscle strain does not amount to a constitutional violation. But, sustaining each of the listed injuries multiple times within the same day potentially could be. The defendants and the court cannot know because the pleadings are insufficient.

## II. Third and Fourth Claims: ORS 654.010

Plaintiffs also fail to state a claim for relief in their third and fourth claims.

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege conduct by a person under the color of state law, and a deprivation of a federal constitutional or statutory right. *Briley v. California*, 564 F.2d 849, 853 (9th Cir. 1977). Section 1983 is not a general tort statute; it is a procedural vehicle allowing individuals to sue state officials and municipalities to enforce a federal right. *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 709–10 (1999); *Blessing v. Freestone*, 520 U.S. 329, 341 (1997); *Monell v. Dept. of Soc. Services of City of New York*, 436 U.S. 658, 690 (1978). Section 1983 "does not provide a remedy for abuses that do not violate federal law." *Collins*, 503 U.S. at 119 (citing *Martinez v. California*, 444 U.S. 277 (1980) and *Deshaney*, 489 U.S. 189 (1989)).

In state court, plaintiffs previously attempted to assert claims under ORS 654.010, but the Marion County Circuit Court dismissed those claims with prejudice because ORS 654.010 does not provide a private right of action. *See* February 3, 2017 Order in Defendants' Notice of Removal, ECF #1, Ex. A, at 18. It is unclear how the plaintiffs now intend to employ this state

statute.³ ORS 654.010 requires employers, apparently including DHS and SACU, to create a safe work environment for their employees.⁴ This state statute cannot form the basis of a Section 1983 claim, as the deprivation of a *federal* constitutional or statutory right is required to bring a Section 1983 claim. *Blessing*, 520 U.S. at 340 (citing *Golden State Transit Corp. v. City of Los Angeles*, 493 U.S. 103, 106 (1989)).

If plaintiffs mean to use ORS 654.010 to help establish the first element of a Section 1983 claim—to demonstrate that defendants were acting under color of state law—then the statute is largely irrelevant because it says nothing about DHS' or SACU's authorization to act under color of state law. *Accord* ORS 409.010 (creating DHS).

Plaintiffs also contend that "ORS 654.010 is a statement of state law reflecting the 'special relationship' between defendants and plaintiffs as employer and employees. . . ." Response, ECF #4, at 4. However, for the reasons already discussed *supra* Part I.A.1, an employment relationship is not a special relationship because it is entered into voluntarily, and thus ORS 654.010 is irrelevant in that context.

---

³ Plaintiffs contend that they have "now properly pled a specific state mandate (to be distinguished from policy), so established and so unambiguous as to form the basis, the conditions under which there is a constitutionally protected right to life, bodily integrity, under the 14th Amendment. It is that constitutionally protected right which is violated by persons acting under the color of state law when such persons violate ORS 654.010. 42 USC § 1983 provides a vehicle to enforce a remedy." Response, ECF #4, at 2.

⁴ ORS 654.010 reads in full:
> Every employer shall furnish employment and a place of employment which are safe and healthful for employees therein, and shall furnish and use such devices and safeguards, and shall adopt and use such practices, means, methods, operations and processes as are reasonably necessary to render such employment and place of employment safe and healthful, and shall do every other thing reasonably necessary to protect the life, safety and health of such employees.

Regardless, the federal "Constitution does not guarantee a right to a safe workplace." *See, e.g.*, *Jensen*, 145 F.3d at 1083 (citing *Collins*, 503 U.S. at 128).

13 – FINDINGS AND RECOMMENDATIONS

If the state statute were relevant at all, it would be in the context of a procedural due process claim.

> A § 1983 action may be brought for a violation of procedural due process, where the existence of a state statute may be relevant. . . . In procedural due process claims, the deprivation by state action of a constitutionally protected interest in life, liberty, or property is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest without due process of law.

*Zinermon v. Burch*, 494 U.S. 113, 125–26 (1990)

However, plaintiffs' pleadings and briefing mention only the 14th amendment and substantive due process. First Amended Complaint ¶18. While "constitutional violations under the 14th amendment" necessarily include procedural due process, plaintiffs do not use the words "procedural due process" in their Complaint or Response at all. Regardless, Plaintiffs' complaint does not contain facts—and they do not argue—that they were not given sufficient process before sustaining the cuts and bruises and other injuries. Rather, it is these injuries that they seek damages for.

Finally, state statutes are relevant to Section 1983 claims in situations where a state official caused the harm, not where the harm was inflicted by third parties. The relevant analytical framework is found in the cases on which plaintiffs most heavily rely: *Grubbs I* and *Grubs II* and the danger creation exception. Because there is no basis in law or fact to support claims three and four, they should be dismissed with prejudice.

### III.  DHS, SACU, and individual defendants in their official capacities are improper defendants.

Plaintiffs also argue their injuries were not caused by third parties—the mentally ill persons who did the biting, hitting, and spitting while in plaintiffs' care as mental health technicians at SACU— but instead by the policies and procedures of the state and state agencies themselves. Response, ECF #4, at 5. However, this theory of liability is unavailable to plaintiffs because DHS and SACU are state agencies, not local governments or municipalities. Section

1983 does not allow for suits against states, state agencies, or state officials in their official capacities. *See, e.g.*, *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989) ("neither a State nor its officials acting in their official capacities are 'persons' under § 1983."); *Connick v. Thompson*, 563 U.S. 51, 60–61 (2011) (same); *Monell*, 436 U.S. at 691 (same); *Johnson*, 474 F.3d at 638–39) (discussing the liability of state officials in their *personal* capacities when there is an underlying constitutional tort).

Furthermore, the Supreme Court has made clear that there is no respondeat superior liability available to plaintiffs under Section 1983. *See Iqbal*, 556 U.S. at 676 ("Because vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.").

Plaintiffs argue their claims should be allowed to proceed against DHS and SACU because they waived their 11th Amendment immunity by removing this action to federal court. Response, ECF #4, at 4. While it is true that removal waives 11th Amendment immunity, this waiver does not change the requirement that Section 1983 claims must be brought against persons, not states and their agencies. The 11th Amendment concerns the states' immunity from being sued in federal court. *E.g.*, *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 238 (1985).

For all of these reasons, defendants DHS and SACU should be dismissed with prejudice, and the individually named defendants should be dismissed in their official capacities.

## IV. Leave to Amend

Federal Rule of Civil Procedure 15(a)(2) provides that "[t]he court should freely give leave [to amend] when justice so requires." Such leave, however, "is not to be granted automatically." *Jackson v. Bank of Hawaii*, 902 F.2d 1385, 1387 (9th Cir. 1990). The court

"may exercise its discretion to deny leave to amend due to 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, . . . [and] futility of amendment.'" *Carvalho v. Equifax Info. Servs.*, LLC, 629 F.3d 876, 892–93 (9th Cir. 2010) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)) (alterations in original) (emphasis added). Of these factors, "[i]t is the consideration of prejudice to the opposing party that carries the greatest weight." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F3d 1048, 1052 (9th Cir. 2003).

Amending the third and fourth claims would be futile. As discussed above, ORS 654.010 does not provide a basis for a Section 1983 claim and ORS 654.010 is inapplicable in the substantive-due-process context.

However, plaintiffs should be given one opportunity to amend claims one and two—against the individually named defendants in their personal capacity only—under the danger creation exception recognized by *Deshaney*, *Grubbs I*, and *Grubbs II*. At oral argument, defendants argued that the alleged injuries do not rise to the level of a constitutional tort and that there simply are no facts plaintiffs could plead that would state claims against these defendants—and thus *any* amendments would be futile. This court is not so certain, and is not prepared to risk the unfairness of dismissal with prejudice at this early stage.[5]

## RECOMMENDATIONS

Defendants' Motion to Dismiss (ECF #3) should be GRANTED. Claims three and four should be dismissed with prejudice for failure to state a claim, and plaintiffs should be granted

---

[5] While plaintiffs were given an opportunity to amend the complaint in state court, this is plaintiffs' first request to do so before this court. Moreover, in state court defendants argued that plaintiffs' claims were deficient on other grounds, i.e., because they failed to cite an underlying constitutional right and failed to name individuals with personal involvement. ECF #1, at 46-47. Plaintiffs have since addressed those deficiencies in their First Amended Complaint.

leave to amend claims one and two under the danger creation exception recognized by *Deshaney*, *Grubbs I*, and *Grubbs II*.

## SCHEDULING ORDER

These Findings and Recommendations will be referred to a district judge. Objections, if any, are due Wednesday, July 05, 2017. If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due within 14 days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

## NOTICE

These Findings and Recommendations are not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any Notice of Appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of a judgment.

DATED June 19, 2017.

/s/Youlee Yim You  
Youlee Yim You  
United States Magistrate Judge